MADDOX, Justice.
Floyd & Beasley Transfer Company, Inc., appellee, filed an application with the Alabama Public Service Commission seeking approval to engage in dual operations, and issuance of a permit to operate, as a contract carrier by motor vehicle in intrastate commerce over irregular routes, in the transportation of:
(A) Paper and wood pulp,
Between the plantsite and warehouse facilities of Kimberly-Clark Corporation, Coosa River Newsprint Division, at or near Coosa Pines, Alabama, on the one hand, and, on the other, points in Alabama;
(B) Material, equipment and supplies used in the manufacture of paper and wood pulp,
Between points in Alabama, on the one hand, and, on the other, the plantsite and warehouse facilities of Kimberly-Clark Corporation, Coosa River Newsprint Division at or near Coosa Pines, Alabama.
A hearing on the application was held by the APSC on April 3, 1975, at which time Floyd & Beasley offered evidence in support of the application, including testimony of the supporting shipper, Kimberly-Clark, to the effect that it needed provision of a specialized “switching service” in order to reduce in-house handling and warehousing requirements, and the availability of a lower transportation rate in order to be able to effectively compete with a major competitor located in Tennessee. The applicant also introduced testimony that if it could not get the contract carrier service, it would institute private carriage operations of its own. Ross Neely Express, Inc., Redwing Carriers, Inc., North Alabama Express, Inc., *941 AAA-Cooper Transportation, Hiller Truck Lines, Inc., and Baggett Transportation Company, all motor common carriers operating in intrastate commerce within the State of Alabama, offered evidence in opposition to the application. An examiner who heard the evidence issued his Report and Recommended Order on August 4, 1975, wherein he recommended denial of the application. He found that applicant Floyd & Beasley had failed to carry its burden of proving that the proposed service would be consistent with the public interest, and further, that Floyd & Beasley had not shown good cause for a finding that dual operations under the particular circumstances would be consistent with the public interest. Floyd & Beasley filed exceptions to the Examiner’s Report and Recommended Order. Replies to the exceptions were filed by Ross Neely and by Redwing, North Alabama, and AAA-Cooper. On November 24, 1975, the APSC issued the Report and Order of the Commission and adopted and incorporated the Examiner’s Report and Recommended Order. The APSC cited Section 301(12) of Title 48, Code of Alabama 1940 (Recompiled 1958), and found that no good cause had been shown to warrant a finding by the Commission that Floyd & Beasley may engage in dual operations consistently with the public interest. It denied Floyd & Beasley’s application.
Floyd & Beasley appealed the APSC order to the Circuit Court of Talladega County, Alabama. After briefs were filed by all parties, except Baggett, and oral argument was had, the circuit court entered a final judgment, in part, as follows:
“ * * * This the Court has done and has earlier found, and hereby holds, that the APSC erred to the prejudice of Floyd & Beasley’s substantial rights in its application of the law and the APSC’s order was based upon a finding of facts contrary to the substantial weight of the evidence.
“It is therefore, ORDERED, ADJUDGED and DECREED by the Court that the Order of the Alabama Public Service Commission, in its Docket No. 16957, dated at Montgomery, Alabama, on November 24, 1975, is reversed, and, further, this cause is remanded to the said Alabama Public Service Commission for issuance of a contract carrier permit authorizing operations as set out earlier herein to Floyd & Beasley Transfer Company, Inc. The APSC may impose restrictions upon such permit, or upon Floyd & Beasley’s presently held common carrier authority, if in its judgment such restrictions are necessary.”
Protestants-Appellants appealed to this Court.
We review the order of the trial court without any presumption that it is correct, because this Court is governed by the same rules in its review as was the circuit court, that is, as if the appeal from the APSC order had been taken primarily and directly to this Court. Alabama Public Service Com’n v. Consolidated Transp. Co., 286 Ala. 323, 239 So.2d 753 (1970).
The standards which govern the Commission involving an application for a permit to operate as a contract carrier are:
(1) that the applicant is fit, willing and able to properly perform the service of a contract carrier by motor vehicle and to conform to the provisions of the statute and the lawful requirements, rules and regulations of the Commission thereunder; and
(2) that the proposed operation to the extent authorized by the permit will be consistent with the public interest.
Alabama Public Service Com’n v. Consolidated Transp. Co., 286 Ala. at 325, 326, 239 So.2d at 755.
It is undisputed that the supporting shipper, Kimberly-Clark, went to Southeastern Leasing, Inc., a wholly owned subsidiary of Floyd & Beasley, for the purpose of arranging for trucks to be leased from Southeastern Leasing, in order that Kimberly-Clark could haul its own commodities. Floyd & Beasley proposed the contract carrier operation, the subject of the application to the APSC that is involved here. At the hearing, witnesses for the supporting shipper *942 testified that it would go to private carriage if the Floyd & Beasley application was not granted.
Title 48, Section 301(11), Code of Alabama, 1940 (Recomp.1958), which deals with contract carrier regulation, provides, in part:
“ * * * Subject to section 301(12) of this title, a permit shall be issued to any qualified applicant therefor, authorizing in whole or in part the operations covered by the application, if, after public hearing of the application, it appears from the application and the evidence in support thereof or from any hearing held thereon that the applicant is fit, willing and able to properly perform the service of a contract carrier by motor vehicle and to conform to the provisions of this article and the lawful requirements, rules and regulations of the commission thereunder, and that the proposed operation, to the extent authorized by the permit will be consistent with the public interest, otherwise such application shall be denied. * * ” [Emphasis supplied]
It is apparent that the APSC was aware of the burden of proof in a contract carrier case, because the Examiner, in his Report, stated, in part, as follows:
“The Examiner is well aware of the distinction between the burden of proof required in a common carrier application versus a contract carrier application. An applicant in a common carrier application must establish that its proposed service is required by the public convenience and necessity. In the instant case, the applicant must establish that the proposed service would be consistent with the public interest. There is evidence of record in this case that the granting of the .permit sought by the applicant will have a serious adverse effect upon various of the protesting carriers. While it is true that the quantum of adversity contemplated by each of the protestants would be comparatively small in dollar volume, the actual results could apparently be quite harmful to the involved carriers and, therefore, perhaps to the public served by those carriers and the employees of those carriers. Apparently, the outbound movement of paper and woodpulp is much more important than the inbound movement of equipment, material and supplies used in the manufacture of paper and woodpulp. In fact, the supporting shipper states that it would be willing to consummate its contract with Floyd & Beasley if the Commission saw fit to deny the inbound portion of the application and to grant the outbound portion. The supporting shipper states that it would not propose to pay the contract carrier rate to Floyd & Beasley to have a truck sent to Mobile to pick up a 1,000 pound shipment for delivery to the supporting shipper. The supporting shipper would primarily utilize the applicant as a truckload carrier of outbound commodities. The existing motor common carriers would be expected to lose the more valuable truckload traffic but would be expected to stand ready to render the less profitable LTL service. The loss of the truckload traffic would have further adverse effect upon the continuation of the less profitable LTL service by the protestants. Any action taken by this Commission which can be contemplated to have an adverse effect upon the ability of existing motor common carriers to continue to render adequate LTL service would certainly not be consistent with the public interest.”
The question of dual operations was of particular concern to the Examiner and to the protestants. The Examiner, in his report, said as follows:
“The dual operations problem presented by the instant application is particularly troublesome to the Examiner. Floyd & Beasley proposes in the instant case to dedicate a particular truck and driver to the exclusive use of Kimberly-Clark from Kimberly-Clark’s Coosa River newsprint facility near Coosa Pines, Alabama, to any destination point in Alabama at which time said truck and driver somehow automatically leave the exclusive service oí- Kimberly-Clark and become *943 available to the general public of Alabama authorized to be served by Floyd & Beasley within the confines of Floyd & Beasley’s common carrier authority which it holds from this Commission. In addition to certain general commodity, regular route authority held by Floyd & Beasley, it also holds certain irregular route authority relating specifically to general commodities in some cases and also as to general commodities as a matter of practice relating to textile mills located at points and places within a radius of 200 miles of Sylacauga, Alabama. While it is true that Floyd & Beasley would not propose to serve Kimberly-Clark as a common carrier, it is entirely conceivable that Floyd & Beasley would have an undue competitive advantage over other existing common carriers in respect to such traffic as might be contemplated to be involved as a result of a grant of the instant application. Additionally, an operation which on the same day is exclusively contract carrier in nature and then exclusively common carrier in nature would be difficult if not impossible for the Commission to police. The mere fact that shipments transported as a contract carrier might move from a different origin or to a different destination than those transported as a common carrier would not remove the opportunity for discrimination or undue advantage. The same would be true where the carrier may serve identical consignees from the same or different points of origin. The Interstate Commerce Commission has found in some cases that the holding of both a certificate and a permit may be consistent with the public interest. However, as with the Interstate Commerce Commission, each application, no matter how similar the circumstances to previous applications, must be determined on its own merits.
“Taking into consideration the services which the supporting shipper states that it needs and the services which the existing carriers state that they are ready, willing and able to provide as common carriers, and taking into consideration the particular proposal of the applicant in the instant case, the Examiner is of the opinion and finds that no good cause has been shown to warrant a finding of consistency with the public interest as relates to dual operations.”
The trial court, commenting on the dual operations question, held, as follows:
“The other principal contention of Floyd & Beasley is that the Attorney-Examiner and the APSC both ignored its evidence of record of its willingness to accept whatever restriction was necessary, either on its present common carrier authority or on the contract carrier authority requested, to obviate any opportunity for discrimination and thereby avoid any dual operations difficulty with its application. Dual operation as the term is used in Section 301(12) of Title 48, Code of Alabama (1940, Recompiled 1958) refers to a person holding at the same time a certificate as a common carrier and a permit as a contract carrier authorizing operations for the transportation of property by motor vehicle over the same route or within the same territory. The reason for such prohibition of dual operations, as found in the decisions by the Interstate Commerce Commission, is to prevent the possibility of discrimination when a shipper has available both common and contract carrier services in the same territory from the same carrier. Gallot-Purchase-Holst, 45 M.C.C. 1; Feree Moving and Storage, Inc., Contract Carrier Application, 99 M.C.C. 454, Schwerman Trucking Co. of Alabama, Inc., Contract Carrier Application, 89 M.C.C. 628. Because of the policy underlying the prohibition, the Interstate Commerce Commission has found it desirable in many cases to restrict or modify operating rights, or even condition a grant of authority on a reservation of the jurisdiction so to do in the future if required, thereby eliminating the objection to dual operations and granting authority otherwise prohibited. Such restrictions to operating authority effectively prevent operations ‘over the same route or within the same territory’ by the motor common carrier in both its contract and common carrier modes of operation. *944 Cardinale Trucking Corp. Extension—Centreville, New Jersey, 100 M.C.C. 125, United Parcel Service of New York, Inc., Common Carrier Application, 79 M.C.C. 629, Lindner Brothers Trucking, Inc., Extension—Groceries, 77 M.C.C. 651.
“In the present proceeding there is but a single supporting shipper involved and the applicant’s presently held common carrier authority that is duplicative of the contract carrier authority sought consists mainly of its general commodity authority between Birmingham and Alexander City, serving Coosa Pines or Kimberly-Clark as an intermediate point on such route. In such circumstances it would appear to be a relatively easy matter to fashion a restriction or restrictions to completely remove any possibilities for discriminatory practices, thereby eliminating any bar to award of contract carrier authority due to dual operations. Floyd & Beasley’s general commodity authority between Birmingham and Alexander City via Sylacauga could be restricted against service to Kimberly-Clark or Coosa Pines; similarly, if necessary, Floyd & Beasley’s other irregular route authority could be restricted against service to Kimberly-Clark. Despite the ease with which restrictions could be fashioned to prevent even the possibility of discriminatory practices and despite Floyd & Beasley’s indicated willingness to accept restrictions either on its common carrier authority or the contract carrier authority requested, no discussion of restrictions, of any type, or why such restrictions could not be utilized is contained within the Examiner’s Report and Recommended Order. Furthermore, although the APSC adopted such Examiner’s Report and Recommended Order, is also chose to re-emphasize the dual operations aspect in its denial of Floyd & Beasley’s application. In fact, it appears to rely almost entirely upon such consideration as in its Report and Order on Page 2 it states ‘this application is governed by Title 48, Section 301(12), Code of Alabama 1940 (Recompiled 1958) dealing with dual operations,’ cites such Code section and then finds ‘that no good cause has been shown to warrant a finding by the Commission that Floyd & Beasley may engage in dual operations consistently with the public interest.’ In its order the APSC also does not discuss restrictions of any type nor why such restrictions would not obviate the dual operations prohibition even though Floyd & Beasley had pointed out its willingness to accept such restrictions in their Exceptions of Applicant to Examiner’s Report and Recommended Order served August 4, 1975. Such refusal to discuss, or even to recognize, evidence relating to such an important element and issue involved in dual operations is arbitrary and capricious, and constitutes error in the APSC’s application of the law.”
As we read the trial court’s decree, the trial judge thought that Floyd & Beasley had agreed to accept whatever restriction was necessary, either on its present common carrier authority or on the contract carrier authority requested. We do not believe Floyd. & Beasley made such a broad agreement. In any event, it was not a part of its application. The applicant apparently led the trial court to believe that the only common carrier authority held by Floyd & Beasley which would be duplicative of the contract carrier authority sought would be that of general commodities between Birmingham and Alexander City, Alabama, via Sylacauga, Alabama. That does not appear to be the case. Floyd & Beasley holds general commodity authority between other points in Alabama. The Commission was obviously not only concerned about special or discriminatory treatment as related to the relationship between Floyd & Beasley and Kimberly-Clark, it was also concerned with the same' possibilities as between Floyd & Beasley and all other real and potential receivers and shippers which would be involved within the scope of the proposed operations.
The protestants, in brief, make this assertion:
“Floyd & Beasley represented to the APSC that it would propose to serve the supporting shipper as a contract carrier on an outbound basis from the shipper’s facility at Coosa Pines, Alabama, to all *945 points and places in the State of Alabama. Upon completion of such outbound movement from Coosa Pines, the truck and driver (heretofore operating under contract carriage) suddenly, by magic, began operations pursuant to common carriage authority held by Floyd & Beasley. That truck and driver would then be free to render service throughout the State of Alabama, serving the textile industry, or it could render service to hundreds of other shippers and receivers pursuant to Floyd & Beasley’s general commodity regular route authority, or that truck and driver could suddenly reenter the contract carrier status and pick up a load of materials, equipment, or supplies from any point throughout the entire State of Alabama and return to Coosa Pines. A very interesting and perplexing question is raised as to the following. Suppose Floyd & Beasley takes a load outbound from Kimberly-Clark at Coosa Pines as a contract carrier destined to a particular point in Alabama where Kimberly-Clark had a consignee for paper or woodpulp. If Floyd & Beasley had no textile mill to serve at that same destination point, under what authority would Floyd & Beasley operate to traverse the highways of Alabama from said destination point to an origin point where it would begin to operate pursuant to its common carrier authority?
“By way of example, if the instant authority were granted, Floyd & Beasley could serve Kimberly-Clark as a contract carrier from Coosa Pines to Decatur, Alabama. It is not unlikely that such shipment from Coosa Pines might be destined to such a giant concern as Monsanto at Decatur. Floyd & Beasley could then offer service to Monsanto as a shipper to any point in Alabama such as Montog-mery, such transporation being performed by Floyd & Beasley as a common carrier. Certainly, Floyd & Beasley could then mysteriously transform itself back into a contract carrier and transport a load of materials, equipment, or supplies from Montgomery to Kimberly-Clark at Coosa Pines. Thus, it is elementary that the granting of the instant application would have allowed Floyd & Beasley to perform virtually thousands of transportation services which it cannot now perform and for which no need has been shown.”
The protestants make a valid point, and Floyd & Beasley, in brief, does not deny the protestants’ assertion that a contract carrier could be transformed into a common carrier. In brief, it says:
“ * * * Appellants then state that ‘Floyd & Beasley could then offer service to Monsanto as a shipper to any point in Alabama such as Montgomery, such transportation being performed by Floyd & Beasley as a common carrier.’ This statement can only be true if Floyd & Beasley already holds existing common carrier authority to perform such service. The granting of the instant application would not extend Floyd & Beasley’s existing common carrier authority in any manner whatsoever. . . . ” (Emphasis added).
It is obvious that the Commission recognized that Floyd & Beasley could engage in dual operations and it was on this basis, in part, that the application was denied.
We affirm the order of the trial court remanding this cause to the Commission to allow the Commission to impose restrictions on Floyd & Beasley’s contract carrier authority or upon its common carrier authority. Since the Commission found that restrictions such as proposed orally during the hearing would be difficult to police, the applicant should be permitted to present evidence to show that this Commission finding is erroneous.
The order of the circuit court, insofar as it orders the Alabama Public Service Commission to issue a contract carrier permit, is reversed.
This cause is reversed and remanded to the circuit court with directions to that court to remand the cause forthwith to the Alabama Public Service Commission in order that the Commission may review this cause in accordance with what has been said in this opinion.
*946 AFFIRMED IN PART; REVERSED, IN PART; REMANDED WITH DIRECTIONS.
TORBERT, C. J., and FAULKNER, SHORES and BEATTY, JJ., concur.